**PELTON GRAHAM LLC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

*Attorneys for Plaintiffs and the
putative FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **RIGOBERTO ALVAREZ and JOSE MAURICIO CERNA, Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiffs,** | |
| -against- | **CLASS & COLLECTIVE ACTION COMPLAINT** |
| **XST CORPORATION d/b/a NEW HYDE PARK DINER, XENTHO REALTY LLC and XENIS THOMA, Jointly and Severally,** | **Jury Trial Demanded** |
| **Defendants.** | |

Plaintiffs Rigoberto Alvarez and Jose Mauricio Cerna (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are former bussers and servers at Defendants' diner located in New Hyde Park, New York. For their work, Plaintiffs were paid at rates significantly less than the minimum wage and were not paid overtime premiums for hours worked over forty (40) in a given workweek.

2.      Plaintiffs bring this action to recover unpaid minimum wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid spread-of-hours premiums, and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

3.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York during the six (6) year period preceding the filing of this complaint.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§

2201 and 2202.

## THE PARTIES

**Plaintiffs:**

7.      Plaintiff Rigoberto Alvarez ("Alvarez") was, at all relevant times, an adult individual residing in Queens County, New York.

8.      Plaintiff Jose Mauricio Cerna ("Cerna") was, at all relevant times, an adult individual residing in Queens County, New York.

9.      Throughout the relevant time period, Plaintiffs performed work for Defendants at "New Hyde Park Diner," located at 160 Hillside Avenue, New Hyde Park, New York 11040.

10.     Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

11.     XST Corporation is an active New York corporation doing business as "New Hyde Park Diner" with a principal place of business at 160 Hillside Avenue, New Hyde Park, NY 11040.

12.     Xentho Realty LLC is an active New York corporation with a principal place of business at 160 Hillside Avenue, New Hyde Park, NY 11040.

13.     XST Corp. and Xentho Realty LLC are hereinafter referred to collectively as "New Hyde Park Diner" or the "Corporate Defendants."

14.     The Corporate Defendants' operations are interrelated and unified and are a single enterprise and/or joint employer of Plaintiffs.

15.     At all relevant times, the Corporate Defendants operated together as a single business enterprise utilizing the same practices and policies.

3

16.    Upon information and belief, at all times relevant, the Corporate Defendants were located at the same address, managed by the same persons, and shared the same resources and personnel.

17.    Upon information and belief, Xentho Realty LLC is the entity through which the Individual Defendant own the real property where their diner is located.

18.    Upon information and belief, at all times relevant, the Individual Defendants used the assets from Xentho Realty LLC and XST Corp. to operate New Hyde Park Diner, including to pay the cash wages to the employees of New Hyde Park Diner, including Plaintiffs.

19.    Defendant Xenis Thoma ("Thoma" or the "Individual Defendant" and, together with the Corporate Defendant, the "Defendants") is an owner and operator of the Corporate Defendant.

20.    The Individual Defendant maintains operational control over the Corporate Defendant by instructing employees throughout their daily shifts, determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs.

21.    The Individual Defendant participated in the day-to-day operations of the Corporate Defendant and acted intentionally in their direction and control of Plaintiffs and the Defendants' other similarly situated employees, and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

22.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

23.    At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

24.    At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

25.    Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

26.    Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since November 17, 2017 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at New Hyde Park Diner (the "Collective Action Members").

27.    A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

28.    Plaintiffs and the Collective Action Members have substantially similar job duties

and are paid pursuant to a similar, if not the same, payment structure.

## **FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS**

29.    Pursuant to the NYLL, Plaintiffs bring their Third through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in New York at any time since November 17, 2014 and through the entry of judgment in this case (the "Class Period") who worked as non-management employees at New Hyde Park Diner (the "Class Members").

30.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

31.    The Class Members are so numerous that joinder of all members is impracticable.

32.    Upon information and belief, there are in excess of forty (40) Class Members.

33.    The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

a.    whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wage for all hours worked;

d.  whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

e.  whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts or split shifts in excess of ten (10) hours;

f.  whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

g.  whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year and/or when their wage rate(s) changed, as required by the NYLL;

h.  whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

i.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

34.   <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, are restaurants employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked, were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a shift and/or split shift of ten (10) or more hours, did not receive proper wage statements and wage

7

notices.

35.     If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

36.     <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

37.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

38.     <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

39.     Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

40.     The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Diner**

41.     Upon information and belief, at all relevant times, New Hyde Park Diner has been open for service Monday through Thursday from 6:00 a.m. to 11:00 p.m., Friday and Saturday from 6:00 a.m. to 12:00 a.m., and Sunday from 6:00 a.m. to 10:00 p.m.

42.     Upon information and belief, the Individual Defendant has owned and operated New Hyde Park Diner since in or around 1987.

43.     Upon information and belief, at all relevant times, the Individual Defendant has operated New Hyde Park Diner through the corporate entity XST Corp.

44.     Upon information and belief, XST Corp. was registered with the New York State Department of State, Division of Corporations on December 24, 1987.

45.     Upon information and belief, the Individual Defendant is a constant presence at the diner and is actively engaged in supervising employees and the management of the diner's business.

46.     Upon information and belief, at all times relevant, the Individual Defendant has exercised his authority over payroll and personnel decisions at New Hyde Park Diner, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiffs' Work for Defendants**

47.     Plaintiff Alvarez was employed by Defendants at New Hyde Park Diner from on or about June 28, 2018 through on or about August 30, 2020 (the "Alvarez Employment Period").

48.     From the beginning of the Alvarez Employment Period through in or around mid-November 2019, Alvarez was employed as a busser. For the remainder of his employment from in or around November 2019 through the end of the Alvarez Employment Period, Alvarez worked as a server.

49.     During the portion of his employment as a busser, Alvarez typically worked five (5) days per week, with Thursdays and Fridays off, from approximately 3:00 pm to approximately

10:00 pm, and at least twice per week until 11:00 pm, for a total of between thirty-five (35) to thirty-seven (37) hours per week. On rare occasions, and usually depending on coverage availability, Alvarez was required to work an additional half- or full-shift ranging between three and a half (3.5) and seven (7) hours, such that during these weeks he worked approximately between thirty-eight and a half (38.5) and forty-four (44) hours.

50.     For the portion of his employment when he worked as a server, from in or around November 2019 until on or about March 2020, when the diner closed pursuant to Governor Andrew Cuomo's Executive Order in response to the Covid-19 Pandemic, Alvarez typically worked five (5) days per week, on Monday and Tuesday from approximately 9:00 am to 8:00 pm, on Wednesday from approximately 11:00 am to 5:00 pm and sometimes as late as 8:00 pm, on Saturday from 9:00 am to approximately 8:00 pm, and on Sunday from approximately 10:00 am to between 8:30 pm and on rare occasions until 9:00 pm. For this portion of his employment, Alvarez worked a total of approximately between forty-nine and a half (49.5) and fifty-three (53) hours per week.

51.     From approximately late April 2020 when the diner reopened, until approximately June 24, 2020, Alvarez's schedule changed such that he worked seven (7) days per week, on Monday through Sunday from approximately 9:00 am until 8:00 pm, for a total of approximately seventy-seven (77) hours per week. For certain shifts during this period, Plaintiff Alvarez's start time alternated between 7:00 am or 9:00 am, such that sometimes he worked longer shifts.

52.     For the remainder of his employment from on or about June 24, 2020 when the diner reopened for indoor dining until the end of his employment on or about August 30, 2020, Alvarez's schedule was Monday, Tuesday, and Wednesday from approximately 11:00 am to 8:00

10

pm, and Friday through Sunday from approximately 9:00 am to 8:00 pm, with Thursday off, for a total of approximately sixty (60) hours per week. Towards the end of this period, Plaintiff Alvarez's Tuesday schedule changed from approximately 11:00 am to 9:00 pm, such that Alvarez worked a total of approximately between sixty (60) and sixty-one (61) hours per week.

53.    From the start of his employment until on or about June 10, 2020, Alvarez was paid a purported salary of approximately $300.00 per week in cash for all hours worked. When Plaintiff was transferred into the position as a server in or November 2019, he began to receive gratuities in addition to his $300.00 per week salary. From on or about June 10, 2020 until the end of his employment period, Alvarez's salary alternated between $200.00 and $250.00 per week for all hours worked, plus gratuities.

54.    When Plaintiff Alvarez's weekly pay is divided by the number of hours that he worked during the week, his hourly rate falls below the applicable minimum wage for all hours that he worked each week.

55.    Despite the fact that he regularly worked in excess of forty (40) hours in a given workweek, Plaintiff Alvarez was never paid overtime premiums equal to one and one-half (1.5) times his regular rate for hours worked over 40.

56.    Despite that fact that he worked shifts in excess of ten (10) hours, Plaintiff Alvarez was never paid spread-of-hours premiums equal to an additional hour of minimum wage for such days.

57.    Although Plaintiff Alvarez was told that he was permitted to take an uninterrupted lunch break of between twenty (20) and thirty (30) minutes, whenever he took his break, he was repeatedly reprimanded by the Individual Defendant to get up from his seat because "there was

work to be done" and to resume working. Even though Plaintiff Alvarez did not always take an uninterrupted lunch break, Defendants deducted thirty (30) minutes per shift from Plaintiff Alvarez's total hours worked each week.

58.    Throughout his employment, Plaintiff Alvarez received the entirety of his wages in cash, with no paystub or document reflecting his total hours worked per week, total wages per pay period, or any deductions taken from his pay.

59.    From the start of his employment until in or around September 2018, Defendants did not maintain a timekeeping system that would have properly recorded Alvarez's hours worked. Beginning in or around September 2018, Alvarez was required to clock-in and clock-out at the start and end of his shifts.

60.    Throughout his employment period, Plaintiff Alvarez did not receive any wage notice containing his rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay.

61.    At no point during the Alvarez Employment Period did Plaintiff Alvarez receive a paystub reflecting his rate of pay, hours worked, wages, or any deductions or withholdings from his pay.

62.    Plaintiff Cerna was employed by Defendants at New Hyde Park Diner as a busser from in or around September 2001 through on or about September 2, 2020 (the "Cerna Employment Period").

63.    Throughout the Cerna Employment Period, Plaintiff Cerna was typically scheduled to work on six (6) days per week, with Tuesdays off, from approximately 8:00 am to approximately

3:00 pm, and sometimes as late as 5:00 pm, for a total of approximately between forty-two (42) and fifty-four (54) hours per week.

64.    Upon information and belief, throughout the Cerna Employment Period, Defendants have deducted thirty (30) minutes per shift from Plaintiff Cerna's total hours worked each week, despite the fact that he is often unable to take a complete and uninterrupted thirty (30) minute break. Further, whenever Plaintiff Cerna attempted to take his thirty (30) minute break, he was often reprimanded for doing so.

65.    From in or around December 2013 until approximately December 31, 2018, Plaintiff received a rate of approximately $7.50 per hour for all hours worked, plus gratuities.

66.    In or around March 15, 2018, Plaintiff Cerna was asked to sign a document listing his rate of pay as $11.00 per hour; overtime pay rate at $16.50 per hour; Allowances for Tips at $3.50 per hour and for Meals at $2.85 per meal; and his regular pay day as Wednesday. Prior to this date, Cerna had not received any wage notice nor any document of its kind informing him that Defendants were relying on the tip-credit to compensate him at less than the full minimum wage.

67.    From in or around December 2018 until at least November 30, 2019, Plaintiff Cerna received an approximate rate of $8.00 per hour for all hours worked, plus gratuities.

68.    From in or around December 1, 2019 until the end of his employment on or about September 2, 2020, Plaintiff Cerna received a base pay rate of $8.65 per hour for all hours worked, plus gratuities.

69.    From the start of the Cerna Employment Period, until in or around 2018 when the Individual Defendant told Plaintiff Cerna that he would begin to pay him "on the books," Plaintiff Cerna received his wages entirely in cash. From then on, Plaintiff Cerna received his wages by

check. Despite the fact that he regularly worked in excess of forty (40) hours in a given workweek, Plaintiff Cerna was never paid overtime premiums equal to one and one-half (1.5) times his regular rate for hours worked over 40.

70.    Despite that fact that he worked shifts in excess of ten (10) hours, Plaintiff Cerna was never paid spread-of-hours premiums equal to an additional hour of minimum wage for such days.

71.    For the majority of the Cerna Employment Period, Defendants did not a utilize a timekeeping system that would have properly recorded all of Plaintiff Cerna's hours worked. Upon information and belief, the Individual Defendant noted when Plaintiff Cerna and other employees arrived since he was always present at the diner. In or around 2018, Plaintiff Cerna recalls that a fingerprint scanner was implemented in the diner. Even though Plaintiff Cerna was required to clock-out at 3:00 pm, he was typically required to stay at least an additional fifteen (15) minutes performing side work, such as cleaning and clearing up tables, which was done after he was clocked out.

**Defendants' Unlawful Corporate Policies**

72.    Plaintiffs and the Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums, and spread-of-hours premiums.

73.    Plaintiffs have heard complaints from other employees that Defendants also paid them similarly below minimum wage for all hours worked. Defendants' failure to pay Plaintiffs minimum wages for all hours worked is a corporate policy of Defendants which applies to all of their tipped non-management employees and certain employees paid on a purported salary basis

14

throughout the Class Period.

74.    Plaintiffs have spoken with other employees of Defendants who were similarly not paid overtime premiums for hours worked over forty (40) each week. Defendants' failure to pay Plaintiffs overtime premiums is a corporate policy of Defendants which applies to all of their non-management employees throughout the Class Period.

75.    Defendants' failure to pay Plaintiffs spread-of-hours premiums for days in which Plaintiffs worked a shift or a split shift for a spread of more than ten (10) hours is a corporate policy which applies to all of their non-management employees throughout the Class Period.

76.    Defendants have not provided Plaintiffs or Class Members with proper statement of wages containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

77.     Defendants have not provided Plaintiffs or Class Members with proper wage notices at the time of hire or by February 1 of each year or when their wage rate(s) changed.

78.    Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment.

79.    Upon information and belief, such individuals were required to work for less than minimum wage and were not paid time and one-half when working in excess of forty (40) hours per week.  Additionally, such individuals were not provided spread-of-hours premiums while

working shifts in excess of ten (10) hours, nor were they provided with wage notices at hiring, by February 1 of each year, or when their wage rate(s) changed, or proper wage statements with their wage payments on a weekly basis.

80.    Upon information and belief, throughout the Class Period and continuing until today, defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

81.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

82.    By failing to pay Plaintiffs and the Collective Action Members minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

83.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

84.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  By failing to give proper notice of their intention to take tip credit, Defendants lose the ability to utilize a tip credit against the FLSA's minimum wage for Plaintiffs and the Collective Action Members who worked in tipped positions.  Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment

of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

85.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

86.    By failing to pay Plaintiffs and the Collective Action Members overtime at a rate not less than one and one-half (1.5) times their regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

87.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

88.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
### (Brought on Behalf of Plaintiffs and the Class Members)

17

89.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

90.     Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

91.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  By failing to give proper notice of their intention to take tip credit, Defendants lose the ability to utilize a tip credit against the NYLL's minimum wage for Plaintiffs and Class Members who worked in tipped positions. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

92.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

93.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

18

94.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**<br>**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**<br>**(Brought on Behalf of Plaintiffs and the Class Members)**

95.     Plaintiffs, on behalf of herself and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

96.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the applicable minimum wage in all instances where the Class Members worked either a split shift or more than 10 hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

97.     Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**
**(Brought on Behalf of Plaintiffs and the Class Members)**

98.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

99.    Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195(1), in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

100.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workday that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS</u>
### (Brought on Behalf of Plaintiffs and the Class Members)

101.    Plaintiffs, on behalf of themselves and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

102.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

103.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

## <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b)

to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.      An order tolling the statute of limitations;

d.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.      An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

i.     An award of fifty dollars ($50.00) per Plaintiffs and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 (1) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.     An award of two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.     An award of prejudgment and post-judgment interest;

l.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
November 17, 2020

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton
pelton@peltongraham.com
Taylor B. Graham

23

graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the
putative FLSA Collective and Class*

24

**Notice of Shareholder Liability for Services Rendered
Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of XST CORPORATION and XENTHO REALTY LLC, are hereby notified that the plaintiffs in this matter, individually and on behalf of the putative FLSA collective and the Class they seek to represent, intends to enforce your personal liability, as the ten (10) largest shareholders of XST CORPORATION and XENTHO REALTY LLC, and charge you with indebtedness of said corporations to the plaintiffs for services performed for the corporations as employees during the six (6) year period preceding the filing of the complaint.

Services for the above-referenced corporations were terminated on or about September 2, 2020, within the past 180 days.

Dated:  November 17, 2020

Brent. E. Pelton

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of XST Corporation d/b/a "New Hyde Park Diner", Xenis "Kenneth" Thomas and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____         _Rigoberto Alvarez_
Signature                          Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de XST Corporation "New Hyde Park Diner" y Xenis "Kenneth" Thomas y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios minimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentancion de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____         _Rigoberto Alvarez_
Firma                              Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of XST Corporation d/b/a "New Hyde Park Diner", Xenis "Kenneth" Thomas and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as a representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

Jose Cerna
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de XST Corporation "New Hyde Park Diner" y Xenis "Kenneth" Thomas y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios minimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentancion de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

Jose Cerna
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above.